# EXHIBIT 1

# EXHIBIT 1

Electronically Filed
6/3/2021 4:45 PM
Steven D. Grierson
CLERK OF THE COURT

**COMPL**
**JEFFERY A. BENDAVID, ESQ.**
Nevada Bar No. 6220
jbendavid@bendavidfirm.com
**STEPHANIE J. SMITH, ESQ.**
Nevada Bar No. 11280
ssmith@bendavidfirm.com
**BENDAVID LAW**
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128
(702) 385-6114
*Attorneys for Plaintiff*

CASE NO: A-21-835720-C
Department 15

## DISTRICT COURT

## CLARK COUNTY NEVADA

| | |
|---|---|
| MA & ASSOCIATES LLC, a Nevada limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>THE HARTFORD; SENTINEL INSURANCE COMPANY, LTD.; DOE INDIVIDUALS 1 through 50; inclusive; and ROE BUSINESS ENTITIES I through X; inclusive<br><br>Defendants. | Case No.<br>Dept.<br><br>**COMPLAINT**<br><br>**EXEMPTION FROM ARBITRATION REQUESTED:**<br><br>1. **Probable jury award in excess of $50,000; and**<br>2. **Claim seeking Declaratory Relief.**<br><br>**Jury Trial Demanded** |

COMES NOW, Plaintiff, MA & ASSOCIATES LLC, a Nevada limited liability company ("MA & Associates" or the "Plaintiff") , and hereby submits its Complaint against THE HARTFORD, an unknown business entity ("The Hartford"), SENTINEL INSURANCE COMPANY, LTD. an unknown business entity, DOE INDIVIDUALS 1-50; and ROE CORPORATIONS I through X (together, the "Defendants"), and allege the following:

**Bendavid**Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

Page 1 of 21
Case Number: A-21-835720-C

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to NRS 4.370(1), as Plaintiff has suffered damages in excess of $15,000.

2.      This Court has jurisdiction over the Defendants, including DOES 1 through 50, inclusive, and ROE BUSINESS ENTITIES I through X, inclusive, since Defendants purposefully availed themselves of Nevada's privileges or protections or affirmatively directed their conduct toward Nevada and this action arises such purposeful conduct or Defendants have sufficient minimum contacts with Nevada such that the maintenance of this action does not offend traditional notions of fair play and substantial justice.

3.      Venue is proper in this Court pursuant to NRS 13.010 and 13.040, in that this is the county in which Plaintiff resides and the contractual obligations and incidents related to the filing of this complaint occurred.

**PARTIES**

4.      The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

5.      At all times relevant hereto, Plaintiff, MA & Associates LLC, is a Nevada limited liability company, duly licensed and conducting business within Clark County, Nevada.

6.      Upon information and belief, Defendant, The Hartford is an unknown business entity whose principal place of business is in Connecticut engaged in the business of transacting and selling insurance in Clark County, Nevada.

**Bendavid**Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

7.      Upon information and belief, Sentinel Insurance Company, Ltd., is an unknown business entity engaged in the business of transacting and selling insurance in Clark County, Nevada.

8.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOES 1 through 50, inclusive, and ROE BUSINESS ENTITIES I through X, inclusive, and each of them, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed, believes and thereon alleges that each of the Defendants designated herein as a "DOE" or "ROE BUSINESS ENTITY" are subsidiaries, affiliates, parents, agents, employees, servants or representatives of the named Defendant or persons and entities answering in concert with the named Defendant with respect to the agreement herein pled, who are liable to Plaintiff by reason thereof, and Plaintiff prays leave to amend this Complaint to insert their true names or identities with appropriate allegations when same become known.

## GENERAL ALLEGATIONS

9.      The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

10.     Plaintiff is in the business of providing licensed medical and adult use marijuana testing to customers in Nevada.

11.     As part of Plaintiff's business operations, Plaintiff leased a building on certain real property located at 2009 Western Avenue, Las Vegas, Nevada 89102 (the Property") in which Plaintiff conducted its sample testing for its customers.

**Plaintiff's Insurance Policies**

12.     Plaintiff purchased a "Spectrum Business Owner's Policy" (Policy No.: 53SBATU2362) (the "Policy") from Defendants, which allegedly provided insurance coverage for the Property as well as Plaintiff's business operations on the Property

13.      The Policy's term was between April 24, 2019 and April 24, 2020.

14.     Plaintiff's Policy included Building and Personal Property coverage for the Property and the building on the Property leased by Plaintiff.

15.     Plaintiff's Policy also provided coverage to Plaintiff for Business Liability, Hired/Non-Owned Auto Liability and Umbrella Liability.

16.     Plaintiff's Policy also included a Super Stretch for Business Services Coverage, which provided coverage and additional endorsements for Plaintiff's lost Business Income, Extended Business Income, and Extra Expenses.

**Plaintiff's Loss**

17.     Electricity to Plaintiff's building on the Property was supplied by or through the utility pole, electrical box, and power lines located on Plaintiff's Property.

18.     On June 7, 2019, a fire occurred on the parcel of real property adjacent to Plaintiff's Property.

19.     At this time or at some point in time after the fire started on the adjacent parcel of real property, the electricity supplied to Plaintiff's building on the Property through power lines running from the utility pole and attached electrical box located on Plaintiff's Property unexpectedly surged and then ceased.

20.     This surge of electricity and later loss of electricity service caused the total destruction and loss of certain equipment and supplies located in Plaintiff's building on the Property.

21.     This electrical surge and later loss of electricity service further caused the loss of ongoing testing of client samples as well as the delay, suspension, or cessation of Plaintiff's existing and planned business activities on the Property.

22.     In addition to the direct loss of a portion of Plaintiff's equipment on the Property, this electrical surge resulted in a loss of Plaintiff's projected business income amounting to approximately $1,339,515.07.

23.     Plaintiff also incurred approximately $112,703.94 in "Extra Expenses" arising only as a result of the surge in electricity to Plaintiff's Property and building on June 7, 2019.

24.     Had such an electrical surge not occurred on June 7, 2019, Plaintiff would not have incurred such losses.

25.     Immediately after its loss caused by the surge in electricity, Plaintiff filed a claim under its Policy with Defendants.

26.     Defendants acknowledged Plaintiff's claim and Defendant, The Hartford, assigned Claim Number Y2HF12787 to Plaintiff's loss.

**Defendants' Misapplication of Plaintiff's Policy**

27.     Thereafter, Defendants requested that Plaintiff provide its investigators from Envista Forensics with access to Plaintiff's Property, building, and the damaged areas and equipment, which Plaintiff agreed to provide.

28.     On August 15, 2019, Envista Forensics conducted a site inspection of Plaintiff's Property and building and of the lost equipment, supplies, and damage caused by the June 7, 2019 electricity surge.

29.     As part of the site inspection, Envista Forensics took photographs of the damaged caused by the electricity surge, the utility pole, and power lines.

**Bendavid** Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

30.    Envista Forensics did not investigate whether the utility pole or the power lines were actually located on Plaintiff's Property.

31.    Before Envista Forensics issued any report of its findings from the site inspection, Greg Hinostro, on August 21, 2019, the General Adjuster for Defendant, the Hartford, sent a letter to Plaintiff stating that the location of Defendant's loss occurred on the adjacent parcel of real property where the fire occurred.

32.    Based on this incorrect determination, Mr. Hinostro declared that Plaintiff's coverage under its Policy was limited to Special Property Coverage Form SS 00 07 07 05, which provided limited coverage to Plaintiff for "Off-Premises Utility Services."

33.    Thereafter, Envista Forensics issued its Loss Analysis concerning Plaintiff's claim on October 28, 2019.

34.    As part of its Loss Analysis, Envista Forensics concluded in its professional opinion that the damages claimed by Plaintiff were consistent with a surge in electricity and Plaintiff's claimed costs to repair the damage or lost equipment were fair and reasonable.

35.    Envista Forensics did not offer any opinion regarding the location of the utility pole, box, or power lines that caused Plaintiff's loss.

36.    Envista Forensics further stated that it would later provide an evaluation of the fire that occurred on the adjacent property.

37.    However, no such report was provided to Plaintiff.

38.    Thereafter, Plaintiff inquired with Defendants as to how it was determined that Plaintiff's loss occurred "Off Premises."

39.    Defendants informed Plaintiff that photographs taken establish that a chain link fence constituted the boundary of Plaintiff's Property with the adjacent Property

**Bendavid**Law

702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

and the utility pole, electrical box, and power lines were located on the adjacent property side of the chain link fence boundary.

40.    Thereafter, Plaintiff investigated Defendants' assertions and determined that the actual boundary line as established by a previously prepared site plan that the chain link fence relied upon by Defendants was not the actual legal boundary of Plaintiff's Property and more importantly, the utility pole, electrical box, and power lines running from the utility pole all were actually located on Plaintiff's Property.

41.    As a result, the cause of the loss incurred by Plaintiff did not occur "Off-Premises" as asserted by Defendants but occurred directly on Plaintiff's Property.

42.    On more than one occasion, Plaintiff informed Defendants' Adjuster, Greg Hinostro, and provided him documentation establishing the actual legal boundary between Plaintiff's Property and the adjacent parcel, which demonstrated that Plaintiff's Property included the utility pole, electrical box, and power lines.

43.    In response, Mr. Hinostro declared that after consultation with his supervisor, The Hartford did not agree that the utility pole, electrical box, and power lines were all located on Plaintiff's Property.

44.    However, Mr. Hinostro never supported this "disagreement" with any documentation or references refuting Plaintiff's contention nor did he identify any investigation on the part of Defendants that established that the utility pole, electrical box, and power lines running form the utility pole were not located on Plaintiff's Property.

45.    In a later communication between Mr. Hinostro and Plaintiff, he tacitly conceded that the utility pole, electrical box, and power lines running therefrom, which caused Plaintiff's loss, were in fact located on Plaintiff's Property.

Bendavid Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

46.     Despite the documentary evidence provided by Plaintiff and Defendants' recognition that Plaintiff's loss occurred on its Property, Defendants did not reevaluate Plaintiff's coverage for its loss under its Policy nor did it provide coverage to Plaintiff of the actual Policy provisions related to Plaintiff's loss occurring on Plaintiff's Property rather than "Off-Premises" as incorrectly established by Defendants from the onset of Plaintiff's claim.

**Defendants' Refusal To Pay the Full Amount of Plaintiff's Claim During The Actual Period of Restoration**

47.      In addition to coverage for the direct loss of Plaintiff's equipment and supplies, Plaintiff's Policy obligates Defendants to pay for Plaintiff's lost Business Income and Extra Expenses.

48.     In each instance, Defendants' obligation to pay is limited to the lost Business Income and Extra Expenses incurred during a "Period of Restoration," which Plaintiff's Policy defines as the period between the date of Plaintiff's loss and the date when Plaintiff's damaged or lost property should be repaired, replaced, or rebuilt but not for a period longer than 12 months after the date of Plaintiff's loss.

49.     On February 3, 2021, Defendants' Adjuster, Greg Hinostro sent an email to Plaintiff declaring that Defendants' determination of the "Period of Restoration" began on June 7, 2019, the date of Plaintiff's loss, and expired on September 13, 2019.

50.     Defendants' determination allegedly was based on incorrect information that the final piece of lost or damage equipment was completed on September 13, 2019.

51.     After receiving this email, Plaintiff's representative, Steve Basloe, responded to Greg Hinostro and informed him that this date was incorrect, and Plaintiff in fact did

**Bendavid**Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

not complete the replacement of its lost or damaged equipment until at least December 2019.

52.     Later, Plaintiff provided documentation establishing that the final piece of replaced equipment actually was not installed and operational until January 3, 2020.

53.     Accordingly, the "Period of Restoration" as defined by Defendants as the date of the installation of the last piece of replaced equipment must be from June 7, 2019 through January 3, 2020.

54.     Rather than accept this documentary evidence as demonstrative of the actual expiration of the Period of Restoration, Defendants arbitrarily determined that this final piece of equipment was somehow "readily available" and should not have taken until January 3, 2020 to install and therefore, the "Period of Restoration" should not be extended.

55.     However, Defendants, ironically, relied on the installation of other replacement equipment to artificially cut-off Plaintiff's "Period of Restoration," but when Plaintiff provided the same documentation demonstrating a later installation of replacement equipment, Defendant arbitrarily concluded that this was not acceptable to demonstrate the actual expiration of Plaintiff's Policy defined "Period of Restoration."

56.     Defendants have thus refused to pay Plaintiff's lost Business Income and Extra Expenses during the actual Period of Restoration which commenced on June 7, 2019 and continued through January 3, 2020.

**Defendants' Refusal To Pay the Full Amount of Plaintiff's Lost Business Income And Extra Expenses**

57.     Plaintiff's Policy obligated Defendants to pay Plaintiff's lost Business Income incurred during the Period of Restoration, which commenced on the June 7, 2019 date

Bendavid Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

of Plaintiff's loss and expired on January 3, 2020, which is the date that the last piece of replacement equipment was installed.

58.     According to Plaintiff's Policy, Plaintiff's lost Business Income is comprised of Plaintiff's Net Income before taxes that Plaintiff would have earned during the Period of Restoration but for the loss incurred by Plaintiff and all of Plaintiff's continuing normal operating expenses, including payroll during the Period of Restoration.

59.     After receiving Plaintiff's requested documentation demonstrating well over $1,000,000 in lost Business Income during the Period of Restoration, Defendants on November 4, 2020 determined that Defendants were obligated only to pay the nominal amount of $75,047.00 and immediately issued a check to Plaintiff for this amount.

60.     Defendants did not provide any written explanation as to how it determined that such a nominal amount was due Plaintiff.

61.     Defendants did not explain their methodology for determining such an amount or how such a nominal amount complies with the plain language of Plaintiff's Policy, except that Defendants did inform Plaintiff that its determination was based on the incorrectly determined Period of Restoration expiration on September 13, 2019.

62.     Plaintiff immediately objected to Defendants' determination and informed Defendants that it was depositing Plaintiff's partial payment of its lost Business Income.

63.     Thereafter, Plaintiff provided additional documentation and support for its lost Business Income claim.

**Bendavid**Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

64.     Defendants, allegedly after reviewing this additional documentation and support, informed Plaintiff that upon Defendants' additional review, Plaintiff had been paid enough under the Policy and in fact, was owed an even lesser amount.

65.     Again, Defendants did not offer any written explanation of its methods for determining that Plaintiff had been paid enough under the Policy or how it was now owed a lesser amount.

66.     Receiving an amount that Defendants have self-determined is "enough," is not a limitation of Defendants' obligation to pay Plaintiff's lost Business Income under the Policy.

67.     Plaintiff's Policy also entitled Defendants to pay all of Plaintiff's reasonable expenses incurred during the Period of Restoration that were expended to avoid or minimize the suspension of business and to continue Plaintiff's Operations.

68.     Plaintiff provided documentation and support demonstrating that it incurred approximately $112,703.94, which included legal expenses incurred in resolving dispute with Plaintiff's landlord regarding its loss, travel expenses for Plaintiff's management to travel to Plaintiff's Property to determine manner to avoid or minimize Plaintiff's loss of business, and the replacement of critical supplies required to minimize or avoid further loss of business, and the institution of service agreement(s) to repair and replace damaged or lost equipment and supplies.

69.     Despite Plaintiff's Policy and its demonstration of these costs incurred as Extra Expenses as defined in Plaintiff's Policy, Defendant has denied payment.

70.     Plaintiff has sustained significant losses as a result of the damage caused on June 7, 2019.

71.     Plaintiff's losses were explicitly covered by the actual applicable provisions of Plaintiff's Policy.

72.     Plaintiff has at all times relevant complied with all of its obligations required under the Policy, including, but not limited to:

(a) the payment of all premiums required,

(b) Notifying the police if a law was broken;

(c) Providing prompt notice to Defendants of Plaintiff's incurred loss or damage, as well as a description of the personal property involved;

(d) Providing Defendants immediately with a description of how, when, and where Plaintiff's physical loss or damage occurred;

(e) Taking all reasonable steps to protect the personal property covered from further damage;

(f) Providing a complete, documented inventory of the damaged property;

(g) Permitting Defendants the right to inspect the damaged property and providing all documents evidencing Plaintiffs' loss;

(h) Permitting questioning under oath regarding the matter at issue;

(i) Sending a signed sworn statement within 60 days of the loss incurred by Plaintiff;

(j) Cooperating in full with Defendants in the investigation and settlement of MA Analytics' claim; and

(k) Resuming operations as quickly as possible.

73.     Defendants nonetheless have refused to pay Plaintiff the amounts it is owed by Defendants as the insured under the Policy and instead, have attempted to pay or have paid only a nominal portion of the amount claimed by Plaintiff without justification or

in bad faith in order to unfairly enhance their own profits and economic interests by avoiding contractual obligations and ignoring the contractual rights and economic needs of Plaintiff, as Defendants' insured.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

74.    The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

75.    Plaintiff and Defendants are parties to the Policy, which is a valid and existing contract for insurance.

76.    At all times relevant herein, Plaintiff has performed all of its obligations owing under the Policy and has satisfied all relevant conditions precedent, including, but not limited to the payment of all premiums owed.

77.    Defendants had a duty under the Policy to investigate fully Plaintiff's claim, apply and apprise Plaintiff of the applicable portions of Plaintiff's Policy, pay all amounts entitled to Plaintiff under the Policy upon Plaintiff's submission of a claim, including, but not limited to, the payment of Plaintiff's claims for claims for loss of Business Income and Extra Expenses, or otherwise inform Plaintiff of the reasons for Defendants' denial of Plaintiff's claim.

78.    Defendants breached the terms and conditions of the Policy when they failed to discharge their contractual duties owed Plaintiff under the Policy by failing to fully investigate Plaintiff's claim, failing to apply the proper provisions of Plaintiff's policy to Plaintiff's claim, failing to inform Plaintiff of the reasons for Defendants' denial of Plaintiff's claim, and failing to pay the amounts claimed by Plaintiff and owed Plaintiff under the applicable Policy provisions.

**Bendavid**Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

79.     As a proximate and direct result of the Defendants' breach of the Policy, Plaintiff was damaged in an amount in excess of $15,000.

80.     It has also become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

**SECOND CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

81.     The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

82.      Plaintiffs and Defendants are parties to the Policy, which is a contract for insurance.

83.     As a result of Defendants being parties to the Policy, Defendants owed Plaintiff a duty of good faith in the performance of the terms and conditions of the Policy.

84.     Rather than perform in a manner that honors the duty of good faith owed Plaintiff, Defendants' instead have sought to protect their own interests, including their economic and profit interests to the detriment of Plaintiff by refusing to discharge their contractual duties in good faith, which was owed Plaintiff under the Policy without reasonable grounds or good cause and with knowledge of or in reckless disregard of the lack of any reasonable grounds or good cause.

85.     Defendants breached the duty of good faith owed Plaintiff when they failed to fully investigate Plaintiff's claim, failed to apply the correct portions of the Policy applicable to Plaintiff's claim, failed to adequately inform Plaintiff of the reasons for Defendant's denial of Plaintiff's claim, and failed to pay the amounts claimed by Plaintiff and owed Plaintiff under the applicable Policy provisions and law.

**Bendavid** Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

86.     Defendants' decisions not to fully investigate Plaintiff's claim, apply the correct portions of the Policy to Plaintiff's claim, adequately inform Plaintiff of the reasons for Defendants' denial of Plaintiff's claim, and failure to pay the amounts claimed and owed Plaintiff under the Policy and applicable law were motivated by desire to unfairly enhance their own profits and economic interests by avoiding contractual obligations and ignoring the contractual rights and economic needs of Plaintiff, as Defendants' insured.

87.     Accordingly, Defendants' conduct was undertaken in a manner that was unfaithful to the purpose of the Policy.

88.     As a result, Defendants breached the implied covenant of good faith and fair dealing and the duty of good faith owed Plaintiff by engaging in such conduct without justification or in bad faith.

89.     As a result, Plaintiff's justified expectations under the Policy were denied.

90.     As a proximate and direct result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff was damaged in an amount in excess of $15,000.

91.     It has also become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

## THIRD CAUSE OF ACTION
### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

92.     The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

93.    Plaintiffs and Defendants are parties to the Policy, which is a contract for insurance wherein a special element of reliance or fiduciary duty exists between Plaintiff and Defendants.

94.    As a result of Defendants being parties to the Policy, Defendants owed Plaintiff a duty of good faith in the performance of the terms and conditions of the Policy.

95.    Rather than perform in a manner that honors the duty of good faith owed Plaintiff, Defendants' instead have sought to protect their own interests, including their economic and profit interests to the detriment of Plaintiff by refusing to discharge their contractual duties owed Plaintiff under the Policy with the awareness of the absence of reasonable grounds or good cause and with knowledge of or in reckless disregard of the lack of any reasonable grounds or good cause and in contravention to the documentation that Defendants were provided.

96.    Defendants breached the duty of good faith owed to Plaintiff when they failed to fully investigate Plaintiff's claim, failed to apply the correct portions of the Policy applicable to Plaintiff's claim, failed to adequately inform Plaintiff of the reasons for Defendant's denial of Plaintiff's claim, and failed to pay the amounts claimed by Plaintiff and owed Plaintiff under the applicable Policy provisions and law.

97.    Defendants' decisions not to fully investigate Plaintiff's claim, apply the correct portions of the Policy to Plaintiff's claim, adequately inform Plaintiff of the reasons for Defendants' denial of Plaintiff's claim, and failure to pay the amounts claimed and owed Plaintiff under the Policy and applicable law were motivated by desire to unfairly enhance their own profits and economic interests by avoiding contractual obligations and ignoring the contractual rights and economic needs of Plaintiff, as Defendants' insured.

**Bendavid** Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

98.     Defendants' conduct also is part of a larger pattern of unfair claims practices intentionally engaged in by Defendants to enhance unfairly their own profits by knowingly and deliberately avoiding contractual obligations and ignoring the contractual rights and economic interests of Plaintiff and other insureds, which have been alleged in previous actions against Defendants such as Depo International, LLC v. Twin City Fire Insurance Company, et al. (Case No.: 2:20-cv-00245-APG-DJA); and The Learning Center, Inc., v. Hartford Casualty Insurance Company (Case No.: 2:19-cv-01213-JAD-DJA).  These systematic practices include but are not limited to: (1) wrongfully denying insureds coverage under active policies; (2) taking arbitrary and capricious coverage positions that operate to reduce the period of coverage owed or amounts legitimately owed under a policy of insurance; and (3) refusing to pay the full amount claimed and owed under a policy of insurance.

99.     Accordingly, Defendants tortiously breached the implied covenant of good faith and fair dealing and duty of good faith owed Plaintiff by engaging in such conduct without justification or in bad faith and with the awareness that Defendants had no reasonable basis for failing to perform as required under the Policy.

100.     As a result, Plaintiff's justified expectations under the Policy were denied as a result of Defendants engaging in such unjustified and bad faith conduct with the awareness that Defendants had no reasonable basis for failing to perform as required under the Policy.

101.     As a proximate and direct result of Defendants' tortious breach of the implied covenant of good faith and fair dealing, Plaintiff was damaged in an amount in excess of $15,000.

102.    Defendants knew and are fully aware of their duty to perform as required under the Policy and pay Plaintiff the amounts owed under the Policy and were aware of the absence of a reasonable basis for not performing their duties under the Policy.

103.    Defendants systematically, deliberately, intentionally avoided its obligations under the Policy by failing to fully investigate Plaintiff's claim, failing to apply the correct portions of the Policy to Plaintiff's claim, failing to adequately inform Plaintiff of the reasons for Defendants' denial of Plaintiff's claim, and failing to pay the amounts claimed and owed Plaintiff under the Policy and applicable law and ignoring the contractual rights and economic needs of Plaintiff, as Defendants' insured.

104.    Therefore, Plaintiff is entitled to an award of punitive damages in the manner permitted by Nevada law.

105.    Based on the allegations asserted herein, Defendants' conduct has occurred in willful and conscious disregard of Plaintiff's rights and economic interests, and as such Defendants are guilty of oppression, fraud, or malice, express or implied.

106.    It has also become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

**FOURTH CAUSE OF ACTION**
**(Violation of NRS § 686A.310)**

107.    The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

108.    Defendants' conduct constitutes unfair insurance practices and a violation of one or more of the following subsections of NRS 686A.310:

(a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(b) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(c) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(d) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

(e) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

(f) Failing, upon payment of a claim, to inform insureds or beneficiaries of the coverage under which payment is made.

(g) Delaying the investigation or payment of claims by requiring an insured or a claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(h) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(i) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the

**Bendavid** Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

109.    As a proximate and direct result of Defendants' violation(s) of NRS 686A.310, Plaintiff has been damaged in an amount in excess of $15,000.

110.    It has also become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

### FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

111.    The allegations asserted in the previous paragraphs of this Complaint are incorporated herein by reference as if set forth in full below.

112.    Plaintiff and Defendants are parties to the Policy, a contract for insurance.

113.    An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends that the Policy obligates Defendants to pay the full amount of Plaintiff's claim made under the Policy as a result of the covered loss incurred by Plaintiff on June 7, 2019.

114.    Upon information and belief, Defendants do not believe such an obligation exists under the Policy.

115.    Accordingly, a declaratory judgment is required, and Plaintiff desires a judicial determination that Defendants are obligated to pay the full amount of Plaintiff's claim under the Policy and the plain language of the Policy, and the methodologies prescribed by applicable law for determining the amounts owed Plaintiff under the Policy require the full payment of Plaintiff's claim.

**Bendavid** Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128

116.    It has also become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is therefore entitled to reasonable attorney's fees and the costs of this action.

**WHEREFORE,** Plaintiff prays for the following:

1.    For an award to Plaintiffs of actual damages in excess of Fifteen Thousand Dollars ($15,000.00), in an exact amount to be determined at trial;

2.    For an award of punitive damages to Plaintiff in an exact amount to be Determined at trial in accordance NRS 42.005;

3.    A Declaratory Judgment granted that determines that Plaintiff's Policy obligates defendants to pay the full amount of Plaintiff's claim;

4.    For reasonable attorneys' fees and costs of suit; and

5.    For any other such remedy or relief, which this Court deems just and proper.

DATED this 3rd day of June 2021.

**BENDAVID LAW**

*/s/ Jeffery A. Bendavid, Esq.*
**JEFFERY A. BENDAVID, ESQ.**
Nevada Bar No. 6220
**STEPHANIE J. SMITH, ESQ.**
Nevada Bar No. 11280
7301 Peak Dr., Suite 150
Las Vegas, Nevada 89128
(702) 385-6114
jbendavid@bendavidfirm.com
ssmith@bendavidfirm.com
*Attorneys for Plaintiff*

**Bendavid** Law
702.385.6114
7301 Peak Drive, Suite 150
Las Vegas, Nevada 89128